UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FAITH A. LENNON**, <br><br> Plaintiff, <br><br> vs. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | 2:21-CV-12942-TGB-PTM <br><br> **ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION** <br><br> **(ECF NO. 17)** |

This matter is before the Court on Magistrate Judge Patricia T. Morris's Report and Recommendation of November 8, 2022 (ECF No. 17), recommending that Plaintiff's motion for summary judgment be denied (ECF No. 11), that Defendant's motion for summary judgment (ECF No. 13) be granted, and that the findings of the Commissioner be affirmed. Plaintiff has filed two objections to the Report and Recommendation (ECF No. 18), and the Commissioner has filed a response (ECF No. 19).

The Court has reviewed Judge Morris's Report & Recommendation, and Plaintiff's objections thereto. For the reasons below, Plaintiff's objections are **SUSTAINED IN PART** and **OVERRULED IN PART**. Accordingly, the Report and Recommendation is **ACCEPTED IN PART** and **REJECTED IN PART**, and this case is remanded to the Commissioner under 42 U.S.C. § 405(g) for further proceedings consistent with this order.

1

# I.   BACKGROUND

## A. Administrative Proceedings

Faith Lennon held various jobs, including as an office manager, mortgage loan coordinator, criminal court clerk, and caregiver, until 2017. ECF No. 8-3, PageID.83; ECF No. 8-6, PageID.213. In September 2019, she applied for disability benefits, asserting that she became disabled in March 2014 from a variety of physical and mental impairments. ECF No. 8-3, PageID.82-83; ECF No. 8-2, PageID.43. Her insured status expired on March 31, 2019, so to be entitled to disability benefits, she needed to prove that she became disabled on or before then. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

After her application was denied initially and on reconsideration, Lennon requested a hearing before an administrative law judge (ALJ). ECF No. 8-2, PageID.59. At a telephonic hearing in October 2020, she testified that she began experiencing fecal incontinence in 2014 and was later diagnosed with collagenous colitis. *Id.* at PageID.66. She was laid off that same year and struggled with unemployment until 2017, when she found work as an in-home caregiver. *Id.* She testified that she believed this job would be suitable for her because it seemed like it would accommodate her need to be close to a bathroom. *Id.* But she stopped working only a few months later after experiencing bowel pain and soiling herself several times at and on the way to her job. *Id.* at PageID.66-67. She testified that she experiences 5 to 10 episodes of

painful diarrhea a day, each lasting 20 minutes, and additional episodes at night. *Id.* at PageID.67. She fasts if she knows she needs to leave the house to minimize the chance of an accident. *Id.* at PageID.74. She has trouble focusing because of fatigue, anxiety, and depression, and she experiences crying spells and panic attacks weekly. *Id.* at PageID.73.

The ALJ called a vocational expert to testify about the jobs Lennon could still perform with her limitations. *See* 20 C.F.R. § 416.960(b)(2). The ALJ directed the expert to assume an individual who:

> possesses the same educational background and work experience as Ms. Lennon. Assume the individual can stand and walk six of eight hours; could sit six of eight hours; could lift 20 pounds occasionally and 10 pounds frequently; could occasionally climb, balance, crouch, kneel, stoop or crawl; could never climb ropes, ladders or scaffolds; would need to avoid hazards such as open moving machinery and unprotected heights; but ordinary hazards such as open doors and obstacles on the floor would not be precluded.

*Id.* at PageID.76-77. The expert testified that, with these limitations and even if she were restricted to standing only two hours a day, the hypothetical individual would still be able to perform Lennon's past work as a mortgage clerk, a court clerk, and an administrative clerk. *Id.* at PageID.77. But if the individual required a low-stress environment, she would be limited to unskilled jobs. *Id.* And if the individual was off task more than 20% of a day, required any unscheduled breaks, or was absent from work more than once a month, she would be precluded from employment entirely. *Id.* at PageID.77-78.

3

Following the five-step process for evaluating Lennon's claim, 20 C.F.R. § 404.1520, the ALJ found that Lennon was not disabled as of the date her insured status expired. ECF No. 8-2, PageID.44. At step two, the ALJ concluded that Lennon suffered from diabetes, hypertension, a history of congestive heart failure, obesity, asthma, collagenous colitis (an inflammation of the large intestine that causes persistent watery diarrhea),[1] and rheumatoid arthritis, which were severe impairments. *Id.* at PageID.45. The ALJ also found that Lennon had obstructive sleep apnea, gastroesophageal reflux disease (GERD), anemia, depression and anxiety, but that these impairments were non-severe. *Id.* at PageID.46 The ALJ elaborated that Lennon's anxiety and depression caused only "mild" limitations in her ability to understand, apply, or remember information; adapt or manage herself; interact with others; and concentrate, persist, or maintain pace. *Id. See* 20 C.F.R. § 404.1520a.

After concluding that none of Lennon's impairments was equivalent to a listing for a presumptively disabling impairment, *see* 20 C.F.R. Part 404, Subpart P, App'x 1, the ALJ adopted the work limitations she had posited to the vocational expert as Lennon's residual functional capacity (RFC). ECF No. 8-2, PageID.47-49. The ALJ then found, at step four, that

---

[1] *See* Microscopic colitis, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/microscopic-colitis/symptoms-causes/syc-20351478 (last visited Mar. 28, 2023).

4

Lennon retained the functional capacity to return to her past work before her insured status expired. *Id.* at PageID.53.

In declining to adopt additional limitations in the RFC, the ALJ acknowledged Lennon's history of fecal incontinence, her diagnosis of microscopic colitis, and her testimony that she experienced between 5 to 10 episodes of painful diarrhea daily. *Id.* at PageID.50-52. The ALJ reasoned, however, that "treatment was generally successful in managing her symptoms." *Id.* at PageID.51. Although Lennon reported some side effects, her medical records reflected that she unilaterally discontinued her medication without speaking to her doctors. And she generally reported "doing well" until April 2019. *Id.* at PageID.52. Accordingly, the ALJ concluded that her testimony about her struggles with diarrhea and incontinence reflected her current symptoms, not her symptoms in March 2019 when her insured status expired. *Id.*

### B. District Court Proceedings

After the Appeals Council declined to further review her case, Lennon appealed to this Court. As relevant here, she argued that the ALJ failed to properly account for her fecal incontinence in assessing her residual functional capacity. ECF No. 11. She also contended that the ALJ failed to consider how her non-severe mental impairments (depression and anxiety) affected her ability to return to her past work.

Judge Morris issued a Report and Recommendation affirming the ALJ's decision. ECF No. 17. The R&R acknowledged that there was an

inconsistency between the ALJ's finding that Lennon's microscopic colitis was a "severe" impairment and the lack of corresponding RFC limitations. *Id.* at PageID.1401. But it concluded that the only error was in finding that Lennon's incontinence was "severe" in the first place. *Id.* at PageID.1402. According to the R&R, the ALJ reasonably found that Lennon's incontinence was controlled by medication as of the expiration of her insured status. *Id.* at PageID.1393. And R&R disagreed with Lennon's arguments that the ALJ failed to adequately explore the reasons for her noncompliance with treatment. *Id.* at PageID.1395. As to Lennon's challenge regarding the ALJ's assessment of her mental impairments, the ALJ adequately explained the lack of mental limitations in the RFC—and therefore reasonably concluded that Lennon could have returned to her past work before her insured status expired. *Id.* at PageID.1402-05.

## II. LEGAL STANDARDS

Either party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendation. 28 U.S.C. § 636(b)(1). Objections must cite the specific portion of the report and recommendation to which they pertain.

This Court must review de novo (as if it were considering the issues for the first time) the parts of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge … or receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

For any parts of the report and recommendation reviewed de novo, the Court's judicial review is nevertheless circumscribed: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is not a high standard, requiring "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

### III. ANALYSIS

Lennon's objections focus on her "residual functional capacity"—that is, her RFC. An RFC is "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1). In assessing an RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) (quoting SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)).

#### A. Objection One

Lennon challenges the R&R's conclusion that the ALJ did not reversibly err in evaluating the functional limitations caused by her fecal incontinence. ECF No. 18, PageID.1409-10. She argues that, although

7

the R&R recognized the inherent inconsistency between the ALJ's finding that Lennon's microscopic colitis was a "severe" impairment and the lack of any corresponding limitations in the RFC, it impermissibly concluded that the error was harmless by rewriting the ALJ's severity determination. *Id.*

The Court agrees. "[A]n agency's actions must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993 (Table), 1993 WL 361792, at *6 (6th Cir. 1993) (internal quotations omitted). Of course, when there is no "substantial doubt" as to "whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture," an agency's error is considered harmless and a remand is unnecessary. *Id.* at *7 (internal citations omitted). But here, the Court cannot be confident that the ALJ's severity determination was an error or that, even if it was, proper consideration of Lennon's limitations would still yield the same RFC.

The Commissioner defends the R&R's conclusion that the inconsistency between the severity determination and the RFC was harmless by arguing that the R&R reasonably agreed with the ALJ that, "for almost an entire year before the expiration of her insured status, Plaintiff kept her incontinence in check with medication." ECF No. 19, PageID.1420. According to the Commissioner, the ALJ's conclusion that Lennon could control her condition with medication is well-supported because, "as the Commissioner explained in her initial brief[,] Plaintiff

8

did not report specific episodes of fecal incontinence or diarrhea during the relevant period." *Id.*

But the ALJ supported her conclusion that Lennon kept her incontinence in check with medication by discussing only a single medical record—a subjective report by Lennon to a GI specialist in April 2019 that she had been "doing well up until two weeks ago, at which point she started having diarrhea." ECF No. 8-2, PageID.52; ECF No. 8-16, PageID.1262. From this one report, the ALJ reasoned that Lennon had generally been "doing well" before her insured status expired on March 31, 2019. ECF No. 8-2, PageID.52. Lennon reported diarrhea several times in the year preceding this report, however. *See, e.g.*, ECF No. 8-7, PageID.368 (August 2018); *id.* at PageID.364 (November 2018); *id.* at PageID.359 (February 2019). A May 2018 report from that same GI specialist notes that Lennon's colitis is "difficult to control," documents continuing diarrhea and incontinence despite Lennon's compliance with delzicol treatment following a hospitalization, and speculates that Lennon's arthritis medication was exacerbating her colitis symptoms. ECF No. 8-16, PageID.1283-87. Neither the ALJ nor the R&R mention this evidence. And before this, Lennon had been reporting diarrhea, incontinence, and other bowel complications to various providers for years. ECF No. 8-9, PageID.601 (diarrhea for 2 years and abdominal pain for several months in December 2013); *id.* at PageID.653 (chronic diarrhea during colon biopsy in June 2016); ECF No. 8-8, PageID.556

9

(diarrhea and nausea in April 2017); ECF No. 8-9, PageID.708 (black stools and abdominal pain during EGD [esophagogastroduodenoscopy, a procedure to examine the upper GI tract] in October 2017); ECF No. 8-10, PageID.753 (hospitalization in March 2018 after one month of diarrhea). The conclusion that Lennon could *totally* control her colitis symptoms simply by taking medication has scant support in the record.

SSR 96-8p explains that an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a *regular and continuing basis*. A 'regular and continuing basis' means 8 hours a day, for 5 days a week." 1996 WL 374184, at *1 (emphasis added). In her RFC assessment, the ALJ came to the definitive conclusion that, "[w]hile taking Budesonide, [Lennon] generally presented in no acute distress, and without reports of fecal incontinence or regular episodes of diarrhea." ECF No. 8-2, PageID.50. But that Lennon did not "regularly" report diarrhea does not explain whether she could accommodate her bathroom needs through normal breaks when she *did* experience it. *See, e.g., Menser v. Comm'r of Soc. Sec.*, No. 16-11787, 2017 WL 2590151, at *8 (E.D. Mich. May 19, 2017) (ALJ's conclusion that claimant's colitis was "well-controlled" by medication did not explain whether she considered periodic flare ups in RFC). It could be that the ALJ believed normal breaks would suffice, but she did not connect the dots in a manner permitting meaningful review. The lack of an explanation is particularly troubling given the vocational

expert's testimony that Lennon would be unemployable if she was off task more than 20% a day or absent more than once a month.

As Lennon points out, the ALJ also failed to properly assess her compliance with treatment. ECF No. 18, PageID.1413. The ALJ simply declared that Lennon was "regularly … noted as noncompliant with medication management," but the record paints a more complex picture of adverse effects from her colitis medication on her other impairments, such as her diabetes and obesity, which affected her taking of medication. The R&R dismissed Lennon's arguments on this score by noting that the ALJ discussed Lennon's diabetes and obesity in her RFC analysis, even if she did not expressly tie them to Lennon's concerns with her colitis medication. ECF No. 8-2, PageID.50. But the issue is not whether the ALJ generally took account of Lennon's diabetes and obesity, which she had concluded were "severe impairments" and was required to do anyway. The proper analysis in this context focuses on whether Lennon had acceptable reasons for discontinuing her medication and whether there was evidence that Lennon's medication was capable of restoring her ability to work in the first place. *See* 20 C.F.R. § 404.1530.

The Commissioner responds that the R&R acknowledged evidence documenting Lennon's complaints about adverse medication effects but appropriately dismissed them because they post-dated her insured period. ECF No. 19, PageID.1425. To be sure, medical evidence is relevant to prove a disability only while the claimant enjoyed insured

11

status. *Estep v. Weinberger*, 525 F.2d 757, 757-58 (6th Cir. 1975). But medical evidence that postdates the insured status date may be, and ought to be, considered insofar as it bears on the claimant's condition prior the expiration of her insured status. *Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976). Here, it illuminates Lennon's reasons for not taking her medication during the insured period.

Moreover, the record contains additional evidence that Lennon complained other adverse side effects from her medication *during* her insured period—including muscle aches (from Budesonide), bloating (from Budesonide), negative effects on her osteopenia—low bone density (Budesonide), and concerns that her colitis medication might have a binding effect on her other medications (Questran). ECF No. 8-10, PageID.731, 753, 1203, 1219, 1243. The ALJ blew past these concerns, simply stating that Lennon "independently discontinued her medication without talking to providers." ECF No. 8-2, PageID.52. This brief analysis ignores that Lennon *was* talking to her providers, who generally responded by adjusting her medications and their dosages. *Cf. Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004) (disagreeing that ALJ failed to consider side effects because claimant failed to report them at all to medical providers). It also ignores that some of her medications were trials, presumably intended to determine whether they were a proper fit.

In summary, the Court cannot conclude that the ALJ's evaluation of Lennon's functional limitations from her colitis is supported by substantial evidence. The Court is mindful the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). But a claimant's "maladies will … inform the ALJ's conclusion about the claimant's abilities." *Id.* And "[i]f relevant evidence is not mentioned"—such as the records here documenting Lennon's periodic bouts of diarrhea and her complaints about the adverse effects of her medications—the Court "cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012). On remand, the ALJ should discuss how she considered this evidence in explaining whether normal breaks would have sufficed to accommodate Lennon's bathroom needs.

Objection One will therefore be **SUSTAINED**.

### B. Objection Two

Lennon also challenges the R&R's conclusion that the ALJ adequately explained her decision not to incorporate any mental limitations into the RFC. ECF No. 18, PageID.1414. She contends that, given the ALJ's finding in at step two of the disability determination that Lennon's anxiety and depression had "mild" effects on her mental functioning, the ALJ needed to do more to explain how she accounted for these impairments in her RFC assessment. *Id.* at PageID.1414-15.

13

But here the Court agrees with the R&R that the ALJ adequately explained her decision not to incorporate mental limitations into the RFC at step two, when she discussed why she found that Lennon's depression and anxiety were "nonsevere." ECF No. 17, PageID.1403. To be sure, a determination that an impairment is "nonsevere" does not automatically mean it carries no functional limitations when considered in combination with a claimant's other impairments. But the ALJ explained that Lennon's "treatment was conservative[,] she regularly presented to evaluations with unremarkable psychiatric findings[,]" and she generally "reported having no difficulties in memory, concentration, understanding, following instructions, getting along with others, or completing tasks." ECF No. 8-2, PageID.46. And the ALJ expressly noted that her RFC assessment took this analysis into account and reflected the degree of limitation she found in conducting the mental functioning analysis at step two. *Id.* at PageID.47.

The ALJ was not required to expressly revisit Lennon's nonsevere impairments in formulating her RFC, so long as she made clear that she considered all of Lennon's impairments. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir. 2020); *see also* SSR 96-8p. Nonetheless, she did so. Specifically, the ALJ acknowledged Lennon's testimony that she had "varying difficulty of focus due to her depression, anxiety, and fatigue." ECF No. 8-2, PageID.51. The ALJ explained that this testimony was "not entirely consistent with the medical evidence" because the

14

medical record reflected that treatment was "generally successful in managing her symptoms." *Id.* The ALJ's evaluation of Lennon's depression and anxiety shows that she honored her responsibility to "consider all of [Lennon]'s limitations, including impairments that are non-severe." *See* SSR 96-8p. And Lennon does not clearly articulate what additional limitations the ALJ should have imposed, much less how the record would support them. *See Ceol v. Berryhill*, No. 3:15-CV-315-CCS, 2017 WL 1194472, at *10 (E.D. Tenn. July 10, 2017) (explaining that "a finding by the ALJ that the Plaintiff has mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have corresponding limitation with regard to her RFC").

Objection Two is therefore **OVERRULED**.

## IV. CONCLUSION

For the above reasons, Plaintiff's Objections to Magistrate Judge Morris's Report and Recommendation (ECF No.18) are **SUSTAINED IN PART AND OVERRULED IN PART**. The Court **ACCEPTS IN PART AND REJECTS IN PART** the Report and Recommendation (ECF No. 17). Judgment shall enter in favor of Lennon against the Commissioner, **REVERSING** the Commissioner's decision that Plaintiff is not disabled and **REMANDING** this case to the Commissioner under 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 31st day of March, 2023.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge